EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN GRAU, acusado y apelante.

No. 3123.—*Visto:* Marzo 31, 1927. *Resuelto:* Abril 21, 1927.

DERECHO PENAL—EVIDENCIA—PESO Y SUFICIENCIA—SUFICIENCIA DE LA PRUEBA PARA SOSTENER UNA CONVICCIÓN.—Cuando los únicos indicios de prueba para establecer la relación del acusado con la comisión del delito son incompatibles con cualquiera hipótesis racional que puede hacerse en relación con la inocencia del acusado, la prueba es insuficiente para sostener una convicción.

SENTENCIA de *Charles E. Foote,* J. (Mayagüez), condenando al acusado por delito de alterar la paz, con costas. *Revocada.*

*Pedro Baigés Gómez,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Ramón Grau fué denunciado porque siendo uno de los es-

pectadores en el ''Teatro Yagüez'' en los momentos en que se proyectaba una película, lanzó desde uno de los balcones de dicho teatro un vaso de papel conteniendo un líquido al parecer de bromo benzílico, sustancia química que por ser asfixiante y cáustica produjo alarma en las demás personas allí reunidas, hasta el extremo de poner término al espectáculo, originándose con tal conducta grosera una gran alteración de la paz pública.

Angel A. Alvarez, policía insular, momentos antes de empezar la función tuvo ocasión de acercarse al acusado para advertirle que dejara de fumar. El policía declara que pudo ver que él tenía a su lado un vaso sanitario. No bien se apagó la luz para proyectar la película, dice que vió que la gente corría y gritaba y que sentía el olor de un ácido asfixiante; que cuando se hizo luz el acusado corría por la puerta de escape; que el vaso cayó abajo, donde estaba San Millán y él se apoderó del vaso. No sabe quién lo lanzó a la platea.

José Soto Rodríguez, oficial de la Policía Insular, declara que se encontraba en el teatro, sentado en una luneta junto a la música. Describe el tumulto que se formó a raíz de apagarse la luz. Que una vez que hubo luz se percibió que del ''paraíso'' habían lanzado un vaso sanitario conteniendo un líquido que resultó ser bromo benzílico; que poco después de la alarma que se produjo habló con el acusado, que andaba en mangas de camisa en unión de dos o tres muchachos más, estudiantes, sin que le hiciera manifestación alguna, y que procedió a su arresto.

Enrique San Millán estaba en el teatro, en luneta, y describe lo que le ocurrió con motivo de haberle caído encima de su persona un líquido que echaran de arriba. Dice que no vió al acusado en el teatro.

Isaías Ramírez era el acomodador del teatro la noche del suceso y dice, en síntesis, que el acusado, que estaba en cuerpo de camisa, se levantó rápidamente del sitio en que

estaba para pasar por la puerta del medio, y que entonces
lo cogió por un brazo, porque estaba prohibido pasar por
esa puerta, y el acusado entonces le dijo: "Yo voy para
abájo a ver a mi familia que está en peligro," y que siguió
y no supo más nada.

Manuel Alayón declara que estaba esa noche en el tea-
tro; conoce al acusado y lo vió subir esa noche arriba a
balcón; que estando el testigo en su luneta se tiró un líquido;
que como a los tres minutos de ocurrir eso vió al acusado
dentro del teatro, parado a su lado, y vió que su actitud
era normal.

Mario Campos declaró que era empleado de la "Bolsa";
que conoce al acusado y lo vió como a las siete y media de
la noche, cuando pidió un vaso sanitario que acostumbraba
pedir casi todas las noches y se lo daba como a todo el que
lo pedía.

Esta fué toda la prueba de cargo. El apelante presentó
una moción de *nonsuit* y la corte la declaró sin lugar. Enton-
ces se practicó prueba de defensa, consistente en las decla-
raciones de tres estudiantes que estaban la noche a que se
se refiere la acusación en compañía del acusado, y tiende a
establecer que estaban junto al acusado y que no vieron que
el acusado lanzara líquido alguno a la platea del teatro.

El único error que se alega es la errónea apreciación de
la prueba por el juez sentenciador. A nuestro juicio el error
se ha cometido. Los únicos indicios de prueba para esta-
blecer la relación del acusado con la comisión del delito son
las manifestaciones del policía Alvarez, que vió al acusado,
que tenía a su lado un vaso sanitario momentos antes de
proyectarse la película, y las del testigo Campos, que des-
pachó esa noche un vaso sanitario al acusado. Ningún otro
elemento de prueba arroja más luz en el asunto. El policía
no dice que percibiera olor alguno al acercarse al acusado
para decirle que cesara de fumar. El vaso no fué identifi-

cado de manera que el que fué encontrado en la platea del teatro fuera el mismo que Campos despachara al acusado.

La prueba es circunstancial en este caso y no podría sostenerse que ella fuese incompatible con cualquiera hipótesis racional que pueda hacerse en relación con la inocencia del acusado. La regla que ha de seguirse en los casos en que la evidencia sea circunstancial se expresa así:

"Y cuando se trata de probar una acusación criminal por medio de evidencia circunstancial, la prueba debe ser no solamente compatible con la culpabilidad del acusado, sino incompatible con cualquiera otra conclusión racional." Greenleaf, vol. 1, sec. 34.

La prueba, por tanto, es insuficiente y *debe revocarse la sentencia apelada y absolverse al acusado.*